UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALTION MAYS | ) |
| | ) |
| Plaintiff, | ) Case No. 10 CV 153 |
| | ) |
| v. | ) Hon. Blanche M. Manning |
| | ) |
| BNSF RAILWAY COMPANY, | ) |
| | ) |
| Defendant. | ) |

### DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
### TO THE FIRST AMENDED COMPLAINT

NOW COMES Defendant BNSF Railway Company ("Defendant" or "BNSF"), by its undersigned attorneys, and for its Answer and Affirmative Defenses to the First Amended Complaint filed herein by Plaintiff Altion Mays ("Plaintiff"), alleges and states as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action to remedy the harm he suffered due to the discriminatory and unlawful employment practices of Defendant BNSF, through its command and control of its contractor, Rail Terminal Services ("RTS"), at BNSF's Chicago Intermodal Facility (a/k/a Corwith Facility).

**ANSWER:** BNSF denies the allegations of this paragraph.

2. Defendant BNSF adopted a discriminatory policy with respect to employees of its contractors, without regard to the impact of such policy on any protected class of persons. BNSF's discriminatory and unlawful policy caused RTS to unlawfully terminate Plaintiff's employment at BNSF's Corwith Facility.

**ANSWER:** BNSF denies the allegations of this paragraph.

3. Plaintiff therefore brings this action for an injunction and award of damages against Defendant BNSF for actions in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and for payment of costs and attorney fees incurred pursuant to 42 U.S.C. § 2000e-5(k).

**ANSWER:** BNSF admits only that Plaintiff's action requests an injunction and damages pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et

seq., and payment of costs and attorney fees pursuant to 42 U.S.C. § 2000e-5(k). BNSF denies any liability or violation of any laws, denies that Plaintiff's claim has merit, and denies that Plaintiff is entitled to any relief, including injunctive relief, damages, or attorneys fees. BNSF denies the remaining allegations of this paragraph.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), and 42 U.S.C. § 2000e-5(f)(3).

**ANSWER:** BNSF denies the allegations of this paragraph. BNSF incorporates paragraph 2 of its Affirmative Defenses.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because the unlawful conduct alleged herein was committed within the boundaries of the Northern District of Illinois.

**ANSWER:** BNSF admits that venue is proper in this district. BNSF denies the remaining allegations of this paragraph.

## THE PARTIES

6. Plaintiff, Altion Mays, is a citizen of the United States of America, and a resident of Chicago, Illinois. Plaintiff is an African-American, is black and is, therefore, a member of a class of individuals protected by the provisions of Title VII of the Civil Rights Act of 1964.

**ANSWER:** BNSF admits the allegations of this paragraph.

7. Defendant BNSF is a Delaware corporation, registered to do business in the state of Illinois, formerly under the assumed name of The Burlington Northern Santa Fe Railway Company. Defendant BNSF is an employer as defined in Title VII.

**ANSWER:** BNSF admits that it is a Delaware corporation, registered to do business in the State of Illinois, formerly under the assumed name of The Burlington Northern and Santa Fe Railway Company. BNSF admits that it is an employer as defined in Title VII, however BNSF denies that it was Plaintiff's employer as defined under Title VII. BNSF denies the remaining allegations of this paragraph. All allegations not expressly admitted are denied.

## BACKGROUND FACTS

8. In or about April, 2000, Plaintiff became employed by RTS as a Spotter and a Machine Operator at BNSF's Corwith Facility, located at 3526 W. 43rd Street, Chicago, IL.

**ANSWER:** BNSF lacks information or knowledge sufficient to form a belief as to when Plaintiff became employed by RTS and therefore denies said allegations. BNSF admits only that Plaintiff worked for RTS as a Spotter and Machine Operator at the Corwith Facility, located at 3526 W. 43rd Street, Chicago, IL. BNSF denies the remaining allegations of this paragraph.

9. On information and belief, for all times relevant, BNSF contracted with RTS to provide intermodal services to BNSF at the Corwith Facility.

**ANSWER:** BNSF admits the allegations of this paragraph.

10. On information and belief, and for all times relevant, BNSF exercised control over the employment relationship between RTS and its employees at BNSF's Corwith Facility. Such control included the right to bar specific RTS employees from its Corwith Facility, effectively terminating their employment with RTS. On information and belief, BNSF exercised this right at its Corwith Facility from time to time.

**ANSWER:** BNSF admits that it had the right to bar specific persons (including RTS employees) from the Corwith Facility, and that it exercised that right from time to time. BNSF denies the remaining allegations of this paragraph.

11. In or about September, 2004, BNSF adopted a policy prohibiting its contractors, including RTS, from employing at its rail yards, including the Corwith Facility, any person having a felony conviction, for any offense, within the previous seven years. To implement this policy, BNSF required its contractors, including RTS, to conduct periodic background checks on all employees working at BNSF facilities. BNSF's policy made no exceptions and did not take into account the type of offense, nor the past employment record of current employees.

**ANSWER:** BNSF admits that, as required in an agreement with the Department of Homeland Security and the Transportation Security Administration through their Customs-Trade Partnership Against Terrorism (C-TPAT) and the DOT/FRA and these agencies' recommended practice, starting in approximately September 2004, BNSF's contracts with hub contractors,

3

including RTS, prohibit them from employing at BNSF's rail yards, any person having a felony conviction, for any offense, within the previous seven years, and requiring the contractors to conduct periodic background checks on their employees working at BNSF facilities. This mandate from these federal agencies made no exceptions and did not take into account the type of offense. BNSF denies the remaining allegations of this paragraph. All allegations not expressly admitted are denied.

      12.    BNSF's blanket policy prohibiting any person with a felony conviction in the previous 7 years from being employed at its facilities caused RTS to terminate Plaintiff, and several other employees at the Corwith facility, all of whom were African-American.

      **ANSWER:**    BNSF denies the allegations of this paragraph.

      13.    On information and belief, pursuant to BNSF's policy directive to its Contractors, including RTS, Plaintiff was not offered an opportunity to appeal his termination, other than to dispute the factual information revealed in a background check, nor was Plaintiff's employment record taken into account.

      **ANSWER:**    BNSF did not terminate the employment of Plaintiff, and thus denies the allegations of this paragraph.

      14.    On or about September 9, 2005, Plaintiff filed with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge of Discrimination Number 210-2005-09105, naming Defendant BNSF, in which Plaintiff alleged that he was unlawfully terminated by RTS on December 15, 2004, as required by the policies of Defendant, and as a result of discrimination based upon the Plaintiff's race and/or color. A true and correct copy of Plaintiff's Charge of Discrimination is attached hereto as Exhibit A.

      **ANSWER:**    BNSF admits that on or about September 9, 2005, Plaintiff filed with the EEOC a Charge of Discrimination, Number 210-2005-09105, naming BNSF as a Defendant, in which Plaintiff alleged that he was unlawfully terminated. BNSF admits that Plaintiff's EEOC Charge alleges discrimination based on race. BNSF admits that Plaintiff's EEOC Charge was attached to the First Amended Complaint as Exhibit A, which is a written document that speaks for itself. BNSF denies that Plaintiff's EEOC Charge alleges that he was unlawfully terminated by RTS due to BNSF's policies. BNSF denies that it discriminated against Plaintiff and denies

4

that Plaintiff's EEOC Charge has any merit. BNSF denies the remaining allegations of this paragraph. All allegations not expressly admitted are denied.

15. On or shortly after October 19, 2009, Plaintiff received, pursuant to the provisions of 42 U.S.C. § 2000e-5(f)(1) and 29 CFR § 1601.28, a Notice of Right to Sue. A true and correct copy of the Notice of Right to Sue is attached hereto as Exhibit B.

**ANSWER:** BNSF lacks information or knowledge sufficient to form a belief as to when Plaintiff received the Notice of Right to Sue letter and therefore denies said allegations. BNSF admits only that a Notice of Right to Sue, dated March 10, 2009, is attached to Plaintiff's First Amended Complaint as Exhibit B. BNSF denies the remaining allegations of this paragraph. All allegations not expressly admitted are denied.

16. On information and belief, the Notice of Right to Sue was signed and mailed by the EEOC on or about March 10, 2009, but was addressed to Plaintiff's previous address. On or about October 15, 2009, Plaintiff learned of the mailing of the Notice of Right to Sue letter to a previous address, and requested, in writing, that the EEOC send the Notice of Right to Sue letter to the correct address. On or about October 19, 2009, the EEOC sent the Notice of Right to Sue to Plaintiff's then-current address on file with the EEOC. True and correct copies of the October 15, 2009 letter from Plaintiff and the October 19, 2009 letter from the EEOC are attached hereto as Exhibit C.

**ANSWER:** BNSF admits only that the Notice of Right to Sue, attached as Exhibit B to Plaintiff's First Amended Complaint, was dated March 10, 2009, and was sent to Plaintiff at the address of 3132 West Marquette 2-W, Chicago, Illinois, 60629. BNSF lacks information or knowledge sufficient to form a belief as to whether such address was Plaintiff's prior address and as to whether on or about October 15, 2009, Plaintiff learned of the mailing of the Notice of Right to Sue letter to a previous address, and requested, in writing, that the EEOC send the Notice of Right to Sue letter to the correct address, and therefore denies said allegations. BNSF admits that the EEOC sent a letter to Plaintiff attached as part of Exhibit C to Plaintiff's First Amended Complaint, which is a written document that speaks for itself. BNSF denies that the Dismissal and Notice of Rights is attached to the EEOC's letter as indicated in the

5

correspondence. BNSF denies the remaining allegations of this paragraph. All allegations not expressly admitted are denied.

17. All conditions precedent for suit having been met, this action was timely commenced on January 11, 2010.

**ANSWER:** BNSF denies the allegations of this paragraph.

## COUNT I

18. Plaintiff re-alleges paragraphs 1-17 above, inclusive, which are incorporated by reference.

**ANSWER:** BNSF incorporates and realleges its answers to paragraphs 1-17 as if fully set forth herein.

19. BNSF's blanket policy against any employee or job applicant having any felony conviction within the preceding 7 years disparately impacted African-Americans, in that the incidence of felony convictions among the working population of African-Americans is higher than the incidence among the general working population. The disparate impact of BNSF's policy is further shown by the fact that all employees terminated at BNSF's Corwith Facility by RTS, at the direction of BNSF, were African-American.

**ANSWER:** BNSF denies the allegations of this paragraph.

20. BNSF's blanket policy on felony convictions is not job related or consistent with business necessity in that, among other reasons, the policy does not take into account the nature and gravity of an employee's offense, the completion by the employee of any sentence nor the nature of the job of an employee impacted by the policy.

**ANSWER:** BNSF denies the allegations of this paragraph.

21. BNSF's blanket policy against any felony convictions for employees directly resulted in RTS terminating Plaintiff's employment at the Corwith Facility, in violation of 42 U.S.C. § 2000e-2.

**ANSWER:** BNSF denies the allegations of this paragraph.

22. BNSF, by maintaining control over the employment practices of its contractors, including RTS, directed the discriminatory acts, practice and policy described herein, and is therefore considered an employer under Title VII.

**ANSWER:** BNSF denies the allegations of this paragraph.

## **AFFIRMATIVE DEFENSES**

NOW COMES Defendant BNSF Railway Company, and for its affirmative defenses, alleges and states as follows:

1. Plaintiff's claims are barred under Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action and 42 U.S.C. §2000e-5(f)(1), because he failed to file this action within 90 days of when he actually received, or through the exercise of reasonable diligence should have received, the EEOC Notice of Right to Sue letter.

2. Plaintiff's claims are barred under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and 42 U.S.C. §2000e-5(f)(1), because he failed to file this action within 90 days of when he actually received, or through the exercise of reasonable diligence should have received, the EEOC Notice of Right to Sue letter.

3. Plaintiff's claims are barred because BNSF did not employ Plaintiff and was not his employer for purposes of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

4. Any and all of Plaintiff's claims are barred to the extent that they exceed the scope of his EEOC Charge, Charge No. 210-2005-09105.

5. Any and all claims are barred to the extent that Plaintiff did not timely, properly, and fully exhaust administrative remedies or satisfy the administrative prerequisites to bringing suit.

6. Any and all of Plaintiff's claimed remedies must be limited, or are not recoverable at all, to the extent that Plaintiff failed to mitigate his claimed losses or caused those losses himself.

7. Even if Plaintiff's race was a motivating factor for any adverse employment action taken against him, the same action would have been taken notwithstanding the existence of that motive.

8. Plaintiff's claims are barred in whole or in part due to Plaintiff's own actions.

9. Plaintiff's claims are barred in whole or in part due to estoppel, laches and/or waiver.

10. Plaintiff's claims are barred in whole or in part because BNSF's policy decisions were based on reasonable and justifiable factors other than race and/or other protected categories.

11. Plaintiff's demand for punitive damages is barred because BNSF took affirmative steps to prevent illegal discrimination.

12. Any award of compensatory or punitive damages must be made and limited in accordance with 42 U.S.C. § 1981a.

13. If the Court or the jury determines that Plaintiff is entitled to an award of punitive or exemplary damages, any such award must be made in accordance with Title VII, 42 U.S.C. § 1981a, the United States Constitution, and other federal law governing such an award.

14. Plaintiff's claims are barred in whole or in part because BNSF's actions were based on business necessity as they were required in an agreement with the Department of Homeland Security and the Transportation Security Administration through their Customs-Trade Partnership Against Terrorism (C-TPAT) and the DOT/FRA and these agencies' recommended practice, which required that, starting in approximately September 2004, BNSF's contracts with hub contractors, including RTS, prohibit them from employing at BNSF's rail yards, any person having a felony conviction, for any offense, within the previous seven years, and requiring the

contractors to conduct periodic background checks on their employees working at BNSF facilities..

15. Plaintiff's claims are barred in whole or in part pursuant to 42 § 2000e-2(g) as BNSF's actions were required in an agreement with the Department of Homeland Security and the Transportation Security Administration through their Customs-Trade Partnership Against Terrorism (C-TPAT) and the DOT/FRA and these agencies' recommended practice, which required that, starting in approximately September 2004, BNSF's contracts with hub contractors, including RTS, prohibit them from employing at BNSF's rail yards, any person having a felony conviction, for any offense, within the previous seven years, and requiring the contractors to conduct periodic background checks on their employees working at BNSF facilities..

WHEREFORE, Defendant BNSF Railway Company requests that the Court dismiss Plaintiff's First Amended Complaint, with prejudice; award Defendant its costs; and grant such other relief as is just.

**BNSF RAILWAY COMPANY, Defendant**

By: /s/ Rachel E.A. Atterberry
One of Its Attorneys

Steven M. Hartmann
Rachel E.A. Atterberry
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
312.360.6986 – telephone
312.360.6572 – facsimile

September 27, 2010

2134321v1

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that a copy of the foregoing *Answer and Affirmative Defenses to the First Amended Complaint* was served upon:

>Steven McMahon Zeller
>Kyle Davis
>Dykema Gossett PLLC
>10 South Wacker Drive, Suite 2300
>Chicago, IL 60606
>(312) 876-1700

via the ecf filing system on the 27th day of September, 2010.

/s/ Rachel E.A. Atterberry