UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALTION MAYS, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 153 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Altion Mays brought this suit against BNSF Railway Company under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that BNSF required Rail Terminal Services ("RTS"), Mays's employer and BNSF's subcontractor, to implement a background check policy that had a disparate impact against African-Americans. Doc. 30. The court granted summary judgment to BNSF and entered judgment in its favor. Docs. 134-136, reported at __ F. Supp. 2d __, 2013 WL 4804839 (N.D. Ill. Sept. 9, 2013). Now before the court is BNSF's bill of costs, which as modified by its reply brief seeks $2,213.38 pursuant to Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C. § 1920. Docs. 137, 146.

Recoverable costs include (1) "[f]ees of the clerk and marshal"; (2) fees for transcripts "necessarily obtained for use in the case"; (3) "[f]ees and disbursements for printing and witnesses"; (4) "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case"; (5) docket fees; and (6) "[c]ompensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services." 28 U.S.C. § 1920. "Although a district court has discretion

-1-

when awarding costs, the discretion is narrowly confined because of the strong presumption created by Rule 54(d)(1) that the prevailing party will recover costs." *Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir. 1997) (internal quotation marks and citations omitted). Mays concedes that BNSF is the prevailing party, but raises several objections to its bill of costs. It is necessary to consider only one of Mays's objections—that he is indigent and therefore should not be subjected to a cost award.

"Since 1983, [the Seventh Circuit] has held that it is within the discretion of the district court to consider a plaintiff's indigency in denying costs under Rule 54(d)." *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006) (internal quotation marks omitted). *Rivera* directs district courts to undertake a two-step analysis when presented with a claim of indigency:

> First, the district court must make a threshold factual finding that the losing party is incapable of paying the court-imposed costs at this time or in the future. The burden is on the losing party to provide the district court with sufficient documentation to support such a finding. This documentation should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses. Requiring a non-prevailing party to provide information about both income/assets and expenses will ensure that district courts have clear proof of the non-prevailing party's dire financial circumstances. Moreover, it will limit any incentive for litigants of modest means to portray themselves as indigent.
>
> Second, the district court should consider the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case when using its discretion to deny costs. No one factor is determinative, but the district court should provide an explanation for its decision to award or deny costs.

*Id*. at 635-36 (citations and internal quotation marks omitted).

Mays has satisfied the threshold inquiry by showing via competent evidence—a detailed declaration executed by Mays himself, Doc. 138-1, supported by several exhibits, including rent

receipts, tax returns, pay stubs, child support withholding orders, and a schedule of income, expenses, assets, and liabilities, Doc. 138-2—that he "is incapable of paying the court-imposed costs at this time or in the future." *Rivera*, 469 F.3d at 635 (internal quotation marks omitted). More than half of Mays's average gross monthly income of approximately $1,500 is devoted to $860.29 in child support payments for two of his three children. Mays lives with his third child and the child's mother, who is currently an unemployed student, and their monthly rent is $700. Mays has no second job and does not receive public assistance or Social Security payments, and nor does he have a car, health insurance, cash savings, financial instruments, real estate, trusts, or uncollected money judgments. Exacerbating Mays's financial situation is the fact that he owes $3,210.27 in past due child support and $600 in medical bills.

Given his negative monthly cash flow and outstanding debts, Mays is currently unable to satisfy a cost award. Moreover, it is unlikely that Mays's financial situation will improve materially in the future, as his felony conviction has prevented him and likely will continue to prevent him from obtaining a job that pays wages higher than the $10 per hour that his current job pays. The one fact weighing against a finding of indigence is that Mays received a $15,000 settlement payment from RTS in 2009. But Mays avers that he exhausted those funds, and in light of his balance sheet, it would appear that he spent that money on living expenses and essentials, not on luxuries or even on what most people would consider non-luxuries, like a car. On this record, the court finds that Mays is unable to pay the cost award now and will be unable to do so in the future. *See Frigo v. Brighthouse Networks*, 2013 WL 6404961, at *1 (S.D. Ind. Dec. 5, 2013) (finding that the losing party was incapable of paying a cost award of "nearly $1,000"); *Tallman v. Freedman Anselmo Lindberg LLC*, 2013 WL 4041412, at *2 (C.D. Ill. Aug.

7, 2013) (finding that the plaintiff was incapable of paying a cost award of $3,357.82, which the court deemed "a large amount in light of Plaintiff's social security income and lack of assets"); *King v. Schieferdecker*, 2011 WL 5325645 (C.D. Ill. Nov. 4, 2011) (finding that the plaintiff was incapable of paying the cost award of approximately $1,150).

Mays has satisfied the second *Rivera* inquiry as well. Granted, the costs sought by BNSF are relatively modest, just over $2,000. But with Mays's expenses consistently exceeding his income, and with the debts he owes, it is difficult to see how he will ever be in a position to make good on a $2,000 cost award. Moreover, Mays pursued this case in good faith, as he reasonably believed that RTS terminated him due to a BNSF policy. With respect to the closeness and difficulty of the issues, although BNSF argues that it "was forced to defend against an employment discrimination lawsuit brought by a Plaintiff who was never even an employee," Doc. 146 at 3, the principal liability issue was not simple because, but as discussed in the court's summary judgment opinion, case law regarding the Title VII interference theory is unsettled in the Seventh Circuit. Given these circumstances, awarding costs against Mays is unwarranted. *See Frigo*, 2013 WL 6404971, at *2 (denying costs because "the costs requested are high for a person of [the losing party's] income, and [the losing party] pursued his claims in good faith"); *Tallman*, 2013 WL 4041412, at *2 (denying costs where the amount sought was "large … in light of Plaintiff's social security income and lack of assets," "Plaintiff brought the case in good faith," and "the issue … was a close one").

For these reasons, the court denies BNSF's request for costs.

December 17, 2013

_____
United States District Judge